IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

| | |
|---|---|
| **KENNETH CHARLES ROGERS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **V.** ) | |
| ) | **COMPLAINT PURSUANT TO** |
| **HAMILTON COUNTY, TENNESSEE,** ) | **42 U.S.C. 1983** |
| **GOVERNMENT,** ) | |
| **SHERIFF JIM HAMMOND,** in his individual ) | **CASE NO.: 1:19-cv-00019** |
| And official capacity, ) | |
| **DEPUTY NATHAN FOUNTAIN,** in his ) | **JURY TRIAL DEMANDED** |
| Individual and official capacity, ) | |
| **DEPUTY CARL YOUNG,** in his individual and ) | |
| Official capacity, and ) | |
| **DEPUTY MIKE MULLINS,** in his individual ) | |
| And official capacity, ) | |
| **JOHN DOE,** in his individual and official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES the Plaintiff, by and through undersigned counsel, and would state the following:

### JURISDICTION AND VENUE

1. The parties and the Plaintiff's cause of action are sufficiently connected to Hamilton County, Tennessee so as to vest jurisdiction and venue in the United States District Court for the Eastern District of Tennessee at Chattanooga. This is an action for injuries sustained on or about January 19, 2018, all caused by a deputy or deputies of the Hamilton County Sheriff's Office.

2. Because some of the Defendants used or ratified excessive force under color of law, a federal question exists as to whether any violated Plaintiff's federal Constitutional rights under the First, Fourth, Ninth, and Fourteenth Amendment. Federal subject matter

jurisdiction thus exists under 28 U.S.C. 1331. Cited throughout his Complaint is 42 U.S.C 1983, which is simply Mr. Rogers' mechanism for enforcing his enumerated constitutional rights.

3. There are State claims that arise from the same nucleus of operative facts as the federal civil rights violation, and so under 28 U.S.C. 1367 this Court has the power to adjudicate them as pendent claims.

## INTRODUCTION

4. Before filing this cause of actions, Mr. Rogers and his representatives sought to learn from several State and County sources the identity of the Deputy who shot him, but so far, no official has been forthcoming. Instead, they have denied Mr. Rogers access to the Use of Force Report while refusing to identify the shooter. A supervisor's report lamely insists that he was "shot by law enforcement".

5. It appears that no one wants to claim the bullet that struck and nearly killed Mr. Rogers. Though this fifty-two-year-old (52) Plaintiff avoided arrest, he at no time harmed or threatened to harm any of the three (3) officers present. Just before the near-fatal bullet was fired, the officers interacted with him, observing him at a close distance for some minutes. In the light of mid-morning, each officer had ample opportunity to pat him down, empty his pockets, or search his person or vehicle. None did so, as each knew that he presented no imminent danger of serious bodily harm to anyone in the vicinity. Kenneth Charles Rogers was not a fleeing felon, and no officer present had plausible, reasonable, or rational grounds for believing he was one.

6. Yet, one of them shot Kenneth Rogers in the back of the leg. Deadly force was used when none was called for. The bullet shattered his left femur bone and the femoral artery near it. He nearly bled to death. Yet, no one will claim that bullet.

## BLOCKING ACCESS TO JUSTICE

7. Each individual Defendant, acting under color of law, has protracted the issuance of official reports that would identify the officer who shot Mr. Rogers on January 19, 2018. Each is thereby attempting to slow-walk the process past the one (1) year statute of limitations, which falls on January 22, 2019, the first day that the Courts open after Saturday, January 19, 2019, when the Courts closed for the Martin Luther King weekend holiday.

8. Plaintiff avers that no plausible justification for such a delay exists. There were just a few witnesses to interview, only one (1) gun upon which to perform ballistic tests, no toxicology reports to await from overburdened State laboratories, and only one (1) bullet trajectory to examine. The facts are straightforward, and present nothing complicated. It is presumed that the immense bloodletting in Mr. Rogers' yard has already been officially photographed and analyzed.

9. Thus, through their deliberate procrastination, all individual Defendants violated the Plaintiff's rights under the Tennessee Constitution, whose "Open Courts" provision guarantees the citizens of Tennessee access to civil justice (Article 1, Section 17).

10. In addition, such deliberate slow-walking continues to violate the First, Fourth, and Fourteenth Amendments to the United States Constitution in that the Defendants have attempted to "run the clock out" on Mr. Rogers claims for redress, hoping and intending

to extinguish his federally protected property right, to wit, a cause of action against official state misconduct, remediable under 42 U.S.C. 1983.

11. By initiating, encouraging, tolerating, or acquiescing in the aforementioned delay and inaction, Sheriff Hammond has stamped the municipal imprimatur onto these Constitutional violations and thereby made Defendant Hamilton County liable for such actions against Mr. Rogers.

12. This sand-bagging must end. Someone must publicly claim the bullet that caused serious injury to the Plaintiff, Kenneth Charles Rogers.

## 42 U.S.C. 1983 CLAIMS

13. Acting under color of law, each of the individual Defendants acted to deprive Mr. Rogers of his right to be free of unreasonable seizure, a right inscribed in the Fourth Amendment of the United States Constitution and made incumbent upon the States through the Fourteenth Amendment. This deprivation took form when three (3) Hamilton County officers unconstitutionally shot Mr. Rogers, using deadly force against a fleeing suspect who posed no threat of serious bodily injury to either the officers or anyone in their vicinity.

14. In addition, any who didn't pull a trigger failed to intercede to stop this unconstitutional activity, beginning with the shooting, and continuing through the official reporting and investigation of this matter, thereby violating 42 U.S.C. 1986.

15. Incorporating the facts contained in the section of this complaint titled "Blocking Access to Justice", Mr. Rogers alleges that each individual Defendant conspired with all the others to prevent him from discovering the facts of his case by arbitrarily delaying the disclosure of documents, such as Use of Force Reports and paperwork that would

identify the State actor who nearly took his life. In striving to reach this corrupt objective, the individual Defendants violated both 42 U.S.C. 1985 and 1986, again depriving him of his rights to Equal Protection under the Fifth and Fourteenth Amendment and his substantive due process rights to life, liberty, and property under the Fourth and Fourteenth Amendment.

16. Taken together, the Defendants' actions may have breached the Ninth Amendment of the United States Constitution, inasmuch as the shooting violated his right to bodily integrity, a residual or penumbral right that pre-existed the United States Constitution, but one ingrained in every concept of ordered liberty.

17. Mr. Rogers further alleges that Defendant Hamilton County, through its usage and custom, was the moving force behind the Constitutional violations cited in this Complaint, starting with the shooting itself and continuing through the failure to disclose the documents and the identification of the shooter. By its adopting a practice, usage, or custom of official tolerance of excessive force by its officers, the Hamilton County Government has created a climate in which this blatantly unconstitutional act against Kenneth Charles Rogers could be reasonably anticipated. Each of the three (3) Defendant officers (Fountain, Young, and Mullins) have witnessed an official pattern and practice of failing to discipline officers for using excessive force, tolerating the continued employment of officers who routinely bully the public, and of hiring and retaining officers who have employed excessive force on numerous occasions.

18. Upon information and belief, Plaintiff avers that the Defendant, Hamilton County, was deliberately indifferent in its training, hiring, retention, and discipline of Defendant

Officers Fountain, Young, and Mullins. As a result, one of these three (3) officers fired the bullet that nearly killed Kenneth Rogers.

## VIOLATIONS OF STATE STATUTES AND LAWS

19. By shooting Mr. Rogers, the Defendant officers violated several State statutes. Yet, Defendant Hammond and others have so far, for reasons unknown, chosen not to enforce a single one of them against any of the three (3) Defendant officers. Instead, Sheriff Hammond prefers to cloak the guilty in anonymity and de facto immunity.

20. Defendant Hammond would have promptly arrested any non-officer who committed such acts, especially when, as here, such acts were committed in the presence of law enforcement, and were tantamount to attempted second degree murder or attempted manslaughter.

21. This shooting of Mr. Rogers, a non-dangerous and unarmed person, constituted a Class C felony, pursuant to T.C.A. § 39-13-103; this statute declares Aggravated Assault, whether intentional or reckless, to be a serious offense, just as T.C.A § 39-13-105 declares the same of Reckless Endangerment, which is a felony when a firearm is involved. The individual officers violated the latter section, with Sheriff Hammond ratifying each violation. This ratification occurred despite Sheriff Hammond's knowledge that the guns here involved were especially deadly, every chamber loaded with a hollow-point bullet.

22. By knowingly levying force intended to kill or seriously injure Mr. Rogers, who was neither a fleeing felon nor a danger to the officers or the public, the three (3) officers violated T.C.A. § 39-11-621. That statute requires that Tennessee officers first avail themselves of non-deadly means of apprehension before escalating to deadly force, and further, to forgo deadly force unless there is probable cause to believe that the fleeing

suspect presents an imminent danger of death or serious bodily harm to the officers or the public.

23. Sheriff Hammond has ratified each officer's violation of T.C.A. § 39-11-621. Sheriff Hammond has ratified each officer's violation of T.C.A. § 39-13-102 and T.C.A. § 39-13-103.

24. Pleading in the alternative, Mr. Rogers alleges that the Defendant officers shot him simply because they misapprehended the risk, to wit, they erroneously and negligently attributed to Mr. Rogers a danger that Mr. Rogers simply did not, in truth or fact, pose to anyone in the vicinity. Such negligence, if proven, is actionable under the Tennessee Governmental Tort Liability Act, found at T.C.A. § 29-20-101 and T.C.A. § 29-20-205.

## RATIFICATION UNDER 42 U.S.C. 1983

25. As the highest-ranking law enforcement official in Hamilton County, Defendant Sheriff Jim Hammond has ratified the unconstitutional actions of his three (3) officers, one (1) of whom fired a near-fatal shot at the fleeing Mr. Rogers. An unclaimed bullet fired, though each officer could see in that morning's broad daylight that Mr. Rogers was neither armed nor dangerous. An experienced Sheriff, Hammond knew a near-fatal shooting under these circumstances indicated that his officers had deprived Mr. Rogers of his rights under both the Fourth and Fourteenth Amendments to the United States Constitution, namely, the right to be free from the State's exertion of excessive force upon him, which has deprived Mr. Rogers of his constitutionally protected rights to life, liberty, and property.

26. Accordingly, Defendant Hammond immediately knew that this shooting was both actionable under 42 U.S.C. 1983, and a violation of the ruling set forth by the United States Supreme Court in *Tennessee v. Garner* [471 U.S.1 (1985)], a settled case-

precedent that for over thirty-four (34) years has circumscribed law enforcement's power to use deadly force to apprehend a non-dangerous fleeing suspect.

27. In order to make the case that the Defendants have violated established law, the Plaintiff notes that both he and Garner were shot from behind while on foot. There are differences: Garner, unlike him, fled into darkness after alighting from a Memphis pharmacy. This contextualization of the Defendants' Constitutional violations illustrates that these Defendants fractured well-established law, to wit, a United States Supreme Court precedent of which any reasonable law enforcement officer should be keenly aware.

28. Perhaps Defendant Hammond has even taught these principles at seminars and in other academic settings, though he has failed to enforce them in his official capacity as Defendant Hamilton County's highest law enforcement officer and chief policymaker. His failure to do so makes Hamilton County liable for the consequences of the unconstitutional actions that his three (3) officers took against Kenneth Charles Rogers on January 19, 2018.

29. Armed with full knowledge of the relevant facts, Defendant Hammond nonetheless hid the identity of the perpetrator, refused to release information about the shooting to the victim, underplayed the seriousness of the incident in the media, and failed to discipline the officer who fired the near-fatal shot. Defendant Hammond thereby ratified the unconstitutionally excessive force that his officers used against Mr. Rogers.

30. Given Defendant Hammond's lofty elected position, his ratification binds Hamilton County to the acts of its officers, making this municipality liable for them.

31. A noted and conservative jurist of the U.S. Seventh Circuit Court of Appeals, Richard Posner, has subscribed to the doctrine of municipal ratification in 42 U.S.C. 1983 cases.

Page **8** of 11

Case 1:19-cv-00019-TRM-SKL   Document 1   Filed 01/22/19   Page 8 of 11   PageID #: 8

## DAMAGES

32. When struck by this unclaimed bullet, Kenneth Rogers first suffered extreme pain, intense fright, and the suffering and anguish that naturally occur when a human being nears death. While the three (3) officers huddled to conceive an unknown plan, the Plaintiff's blood was squirting and spilling everywhere. One officer, to his credit, found and applied a tourniquet.

33. The unclaimed bullet immediately shattered his left femur and nearly severed his femoral artery. It disfigured his left leg, internally and on the surface. It now carries metal plates and screws. The subsequent surgery to his left leg required borrowing veins from the leg that was not hit.

34. Eventually, the injuries caused by the unclaimed bullet necessitated several surgeries, each intended to repair his shattered femur bone, nearly severed artery, and the extensively damaged tissues surrounding both. The unclaimed bullet has caused a loss of feeling and sensation in his left leg. These deficits are reasonably expected to be permanent.

35. The unclaimed bullet caused Mr. Rogers to incur Tens of Thousands of Dollars in medical expenses, all ordinary, all reasonable, and all necessary to treat his life-threatening condition. Because it is reasonably certain that his condition will require future medical treatment, he prays for the reasonable costs of such treatment.

36. Because these medical expenses were reasonably certain to occur once the shot was fired, they can be classified as liquidated damages, upon which the Defendants should pay interest.

37. Because of the debilitating nature of his injuries, Mr. Rogers has already seen a marked reduction in his earning capacity, as well as a precipitous decline in his income. It is reasonably certain that his condition will result in such reductions and declines for the foreseeable future.

38. At least as important is the reasonable certainty that Mr. Rogers will, for the rest of his life, endure mental anguish, pain, suffering, and angst, a natural result for those who daily but vainly wish for their old lives back. A single unclaimed bullet has robbed Mr. Rogers of any hope of a complete recovery from his life-altering injury.

39. In addition, it is reasonably certain that Mr. Rogers has a major medical disability to his leg and body, and that he will suffer that disability for the rest of his life. His leg is permanently disfigured; moreover, he has endured and will permanently endure a certain loss of enjoyment in his life. He may have permanent psychological damage.

40. WHEREFORE, PREMISES CONSIDERED, Mr. Rogers demands a jury of his peers be called to find the facts of this case, and upon doing so, award him actual damages in the amount of Nine Million Six Hundred Thousand U.S. Dollars ($9,600,000.00), to be assessed jointly and severally against Defendants Hamilton County, Sheriff Jim Hammond, and the remaining three (3) law enforcement officers.

41. In order to set an example that will discourage future egregious acts of official violence, Mr. Rogers asks for an award of punitive damages in the amount of Three Million Two Hundred Thousand U.S. Dollars ($3,200,000.00), to be assessed against the appropriate Defendants after the jury has heard the proof.

42. Plaintiff further asks for his attorney fees pursuant to 42 U.S.C. 1988, the costs of the Clerk, FRCP 54 discretionary costs, and for any such further relief to which the evidence in this case may show him justly entitled.

43. Plaintiff asks for a judicial referral, if proper and necessary, to the appropriate state, federal, or international authorities charged with investigating and stopping arbitrary state violence against citizens, for Mr. Rogers did not deserve the injuries inflicted upon him.

Respectfully submitted,

**LAW OFFICES OF JOHN M. WOLFE, JR.**

*s/ John M. Wolfe, Jr.*

**JOHN M. WOLFE, JR. | BPR No. 010319**
*Attorney for Plaintiff*
707 Georgia Avenue, Suite 302
Chattanooga, TN 37402
423.266.8400 | Phone
423.265.8055 | Fax
johnmwolfejr@comcast.net